UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────

TYRONE WALKER,

                              Plaintiffs,

         v.                                              9:17-CV-1008
                                                         (GTS/CFH)

JOSEPH BELLNIER, et. al.,

                              Defendants.
─────────────────────────────────

APPEARANCES:

TYRONE WALKER
94-A-5258
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

GLENN T. SUDDABY
Chief United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

         The Clerk has sent to the Court for review a pro se civil rights complaint filed by

plaintiff Tyrone Walker ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting

claims arising out of his confinement in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS").  Dkt. No. 1 ("Compl.").  Plaintiff, who

has not paid the statutory filing fee, seeks leave to proceed in forma pauperis.  Dkt. No. 2

("IFP Application").  Plaintiff also filed a motion for preliminary injunctive relief.  Dkt. No. 4.

1

## II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). Upon review of Plaintiff's IFP Application, the Court finds that Plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted.[1]

## III.   INITIAL SCREENING

Having found that Plaintiff meets the financial criteria for commencing this action in forma pauperis, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2]

---

[1]    Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that Plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

[2]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must

3

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV.     SUMMARY OF THE COMPLAINT[3]

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in the Complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

---

[3]     The Complaint includes exhibits. *See* Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider the Complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

On July 26, 1994, Plaintiff was committed to DOCCS' custody after being convicted of attempted robbery and criminal possession of a weapon. Dkt. No. 1-1 at 5. On January 17, 2014, Plaintiff received an Administrative Segregation Recommendation from Clinton Correctional Facility ("Clinton C.F.") issued by S.B. Duncan ("Duncan") and approved by Superintendent LaValley.[4] *Id.* at 5-6. The recommendation was based upon Plaintiff's "penchant for serious violence both in the correctional setting and in the community." *Id.* Specifically, Duncan cited to the following: (1) a 2000 assault on staff members at Green Haven Correctional Facility; (2) twenty-four misbehavior reports; and (3) a documented history of escape plots and threats to witnesses, staff and other inmates. *Id.* At the time the recommendation was prepared, Plaintiff was confined in the Special Housing Unit ("SHU") at Upstate Correctional Facility ("Upstate C.F."). Dkt. No. 1-1 at 5-6. The recommendation indicated that a hearing would be conducted within fourteen days and that Plaintiff would remain in the SHU pending the hearing. *Id.* at 6.

On February 26, 2014, Officer Bullis ("Bullis"), the Administrative Segregation Hearing Officer, accepted the recommendation.[5] Dkt. No. 1-1 at 9. Plaintiff appealed the decision to the Commissioner of DOCCS arguing that the hearing officer was biased, refused to allow Plaintiff to call witness, and failed to rely upon "some evidence."[6] *Id.* at 9-14.

On March 12, 2014, Plaintiff wrote to defendant Counselor Melissa A. Cook ("Cook") claiming that there was no reason to place him in administrative segregation. Dkt. No. 1-1 at 18. Plaintiff stated that he posed no threat and had not committed any act of violence in over thirteen years. *Id.*

---

[4]    Duncan and LaValley are not named as defendants.

[5]    Bullis is not a named defendant herein.

[6]    The Commissioner of DOCCS is not identified by name and is not a defendant herein.

On March 13, 2014, a Sixty Day Administrative Segregation Review/Hearing was held. Dkt. No. 1-1 at 37. The three member facility committee, including Cook and defendant Superintendent Donald G. Uhler ("Uhler"), recommended that Plaintiff remain in administrative segregation and refused to award Plaintiff any "incentives" pursuant to the Pilot Incentive Program for inmates in segregation. *Id.* at 8. On April 10, 2014, defendant Deputy Commissioner Joseph Bellnier ("Bellnier") reviewed and approved the decision. *Id.*

On May 5, 2014, Plaintiff wrote to Bellnier asking to be released from administrative segregation or for "better accommodations." Compl. at 4; Dkt. No. 1-1 at 37-42. Plaintiff also objected to the March 2014 review claiming that it was inaccurate and exaggerated his history. Dkt. No. 1-1 at 37-42.

On May 29, 2014, Albert Prack ("Prack"), the Director of the SHU, reversed the February 2014 decision and remanded the matter for a new hearing.[7] Dkt. No. 1-1 at 31. Plaintiff was required to remain in the SHU pending a rehearing. Compl. at 3. On June 11, 2014, the rehearing was held at Upstate C.F. with Eric Gutwein ("Gutwein") presiding.[8] Compl. at 3; Dkt. No. 1-1 at 16-17. The hearing officer found "substantial evidence" that Plaintiff "executed a savage assault on staff" and had "numerous institutional violations over the years" which "demonstrate a grave risk to the institutional safety." Dkt. No. 1-1 at 17. Accordingly, administrative segregation was imposed. Id.

In August 2014, Plaintiff filed a grievance regarding the conditions of his confinement in the SHU. Dkt. No. 1-1 at 33. Plaintiff claimed that he was being treated like inmates on

---

[7] Prack is not named as a defendant herein.

[8] Gutwein is not named as a defendant herein.

"SHU status." *Id.* Plaintiff asked for a television, commissary privileges, phone calls, and the ability to listen to pre-recorded Jumuah services. *Id.* On August 19, 2014, the Inmate Grievance Resolution Committee ("IGRC") issued a response denying the grievance reasoning that Plaintiff was receiving privileges in accordance with DOCCS' Directive #4933. *Id.* at 34.

On August 20, 2014, a Sixty-Day Administrative Segregation Review/Hearing was held. Dkt. No. 1-1 at 49-54. On August 29, 2014, the facility committee found that continued confinement was appropriate. *Id.* Pursuant to the Incentive Program, Plaintiff was permitted one additional visit per week, one personal pair of sneakers, shorts, and pants, and one phone call, not to exceed ten minutes, per month. *Id.* at 50, 54. On October 8, 2014, Bellnier concurred with the recommendation in favor of Plaintiff's continued placement in administrative segregation. *Id.*

On August 22, 2014, Plaintiff wrote to the Deputy Superintendent of Security, identified as "Bell," and asked to be removed from administrative segregation.[9] Dkt. No. 1-1 at 43-48. Plaintiff complained about his conditions of confinement and maintained that Cook would not allow him to use the telephone, despite the prior recommendation. *Id.*

On March 2, 2015, a Sixty Day Administrative Segregation Review/Hearing was held. Dkt. NO. 1-1 at 25-27. The facility committee opined that release from administrative segregation was "not warranted." *Id.* Plaintiff was permitted one additional visit per week, one personal pair of sneakers, shorts, and sweat pants, and one phone call per week, not to exceed fifteen minutes. *Id.* at 28. On March 19, 2015, Bellnier approved the recommendations. *Id.*

---

[9]     Bell is not a defendant herein.

On April 12, 2016, Plaintiff sent a letter to the Administrative Segregation Review Committee ("ASRC") claiming that the reviews were "a farce." Dkt. No. 1-1 at 62-65. Plaintiff argued that defendant Paul P. Woodruff ("Woodruff") "made it clear" that he would not be released from administrative segregation for two to three years. *Id.* Plaintiff objected to Cook's role in the review process and asked for certain accommodations. *Id.* To wit, Plaintiff asked that the plexiglass shield over his cell door be removed, to participate in Jumuah Service via listening to pre-recorded sermons, and for an alternative to soy given his predisposition for colon cancer. *Id.* at 64-65.

In May 2016, Plaintiff filed a grievance requesting to return to the general population. Dkt. No. 1-1 at 56. During interviews, Woodruff and Cook told Plaintiff that he would not be released from the SHU. *Id.* Plaintiff complained that the review process was "perfunctory and rote." Compl. at 4. The IGRC denied Plaintiff's grievance and Plaintiff appealed. Dkt. No. 1-1 at 57. Sandra Danforth ("Danforth"), the Acting Superintendent at Upstate C.F., issued a decision concurring with the IGRC.[10] *Id.* at 58. Plaintiff appealed Danforth's decision to the Central Office Review Committee ("CORC") noting that "Woodruff is not giving me meaningful reviews[.]" *Id.* CORC upheld the Danforth's decision. *Id.* at 60.

On July 4, 2016, Plaintiff sent a letter to Uhler and the ASRC claiming that he did not receive his March 2016 review. Dkt. No. 1-1 at 66-71. Plaintiff complained that the reviews were a "sham" and that Woodruff had no intention of allowing Plaintiff to leave the SHU. *Id.*

On August 17, 2016, a Sixty Day Administrative Segregation Review/Hearing was held. Dkt. No. 1-1 at 72. The three member committee, including Cook and defendant

---

[10]     Danforth is not a defendant herein.

Deputy Superintendent of Programs Joanne Fitchette ("Fitchette"), reviewed Plaintiff's status and determined that continued confinement was appropriate. *Id.* As part of the Incentive Program, Plaintiff was provided "out of cell time" once per month, the opportunity to purchase food at the commissary, one additional visit per month, personal items. and one thirty-minute phone call per week. *Id.* at 75. On February 10, 2017, these decisions were approved by the Deputy Commissioner.[11] *Id.*

On January 30, 2017, a Sixty Day Administrative Segregation Review/Hearing was held. Dkt. No. 1-1 at 177-179. On February 9, 2017, a three member committee, including Fitchette, found that continued segregation was appropriate. *Id.* Pursuant to the Incentive Program, Plaintiff was provided "out of cell time" once per month, the opportunity to purchase food at the commissary, one additional visit per week, and one thirty-minute phone call per month. *Id.* at 179. On July 31, 2017, the recommendations and incentives were approved.[12] *Id.* at 177-179.

On April 20, 2017, Woodruff issued a memorandum to administrative segregation inmates rescinding the Pilot Incentive Program. Compl. at 4; Dkt. No. 1-1 at 77. On April 21, 2017, Plaintiff wrote to Woodruff asking him to reinstate the Pilot Program. *Id.* at 79-80.

On June 22, 2017, Plaintiff wrote to Bellnier complaining that his August 2016 review was the last review that he received. Dkt. No. 1-1 at 82. Plaintiff complained that the review was not signed by Bellnier until February 10, 2017 and was not forwarded to Plaintiff until February 17, 2017. Compl. at 4; Dkt. No. 1-1 at 82-83. Plaintiff reiterated his objections to the review process and the decision to discontinue the Pilot Incentive Program. Dkt. No. 1-1 at 82-83.

---

[11] The signature and name of the Deputy Commissioner who executed the document is not legible.

[12] *See* Footnote No. 10, *supra.*

Construing the Complaint liberally, Plaintiff asserts the following: (1) Fourteenth Amendment Due Process claims related to Plaintiff's initial placement in administrative segregation; (2) Fourteenth Amendment Due Process claims related to the June 2014 rehearing; (3) Fourteenth Amendment Due Process claims related to Plaintiff's continued confinement in administrative segregation; (4) Fourteenth Amendment Due Process claims related to the Pilot Incentive Program; (5) Fourteenth Amendment Substantive Due Process claims; (6) Eighth Amendment claims related to Plaintiff's conditions of confinement in the SHU; (7) Eighth Amendment claims related to Plaintiff's medical needs; and (8) Eighth Amendment claim against Cook related to threats. *See* Compl., *generally*.

## V.     ANALYSIS

## A.     Official Capacity Claims Pursuant to Section 1983

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted

in plaintiff's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).  Actions for damages against a state official in his or her official capacity are essentially actions against the state.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff's claims for money damages pursuant to Section 1983 against defendants in their official capacities are barred by the Eleventh Amendment and are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

**B.    Procedural Due Process**

**1.    Administrative Segregation**

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996).  "Prison discipline implicates a liberty interest when it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)); *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658.

**a.    Liberty Interest**

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. Where the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133. On the other hand, the Second Circuit has found that disciplinary segregation under ordinary conditions of more than 305 days rises to the level of atypicality. *See Colon*, 215 F.3d at 231 ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*.").

12

Administrative segregation inmates are housed in the Special Housing Unit ("SHU") and are subject to most of the disciplinary restrictions of SHU inmates. *See Edmonson v. Coughlin*, 21 F.Supp.2d 242, 248–49 (W.D.N.Y. 1998) (footnote omitted).

Construing the Complaint liberally, Plaintiff claims that he has been confined in continuous administrative segregation in the SHU since January 17, 2014. Thus, Plaintiff has sufficiently plead a liberty interest in remaining free of the confinement to which he was subjected.

### b.      Sufficiency of Process

Plaintiff claims that his due process rights were violated during his initial hearing, his re-hearing, and his post-hearing reviews. *See* Compl. at 3.

### i.      Initial Placement in Administrative Segregation

Due process requires that "[a]n inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). Due process procedures for administrative segregation are minimal, requiring only an informal, non-adversary review. *See Smart v. Goord*, 441 F.Supp.2d 631, 641 (S.D.N.Y. 2006). In the New York State prison system, a regulatory scheme governs the practice of administrative segregation, and it requires that an inmate receive a hearing within fourteen days of entering administrative segregation. *See* 7 N.Y.C.R.R. § 301.4(a).

On January 17, 2014, Plaintiff was placed in administrative segregation pursuant to Duncan's recommendation. Despite the notice indicating that the hearing would be held within fourteen days, the hearing was not held until February 26, 2014. Compl. at 3; Dkt. No. 1-1 at 9. At this juncture, Plaintiff has sufficiently plead a Fourteenth Amendment due

process claim related to his initial placement in administrative segregation.  *See Soto v. Walker*, 44 F.3d 169, 172 (2d Cir. 1995) ("The failure to provide informal review procedures within even as short a time as seven days in connection with a transfer into administrative confinement states a due process claim.").  However, the Court cannot end it's inquiry there and must address the issue of personal involvement.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'"  *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).  The administrative segregation recommendation was issued by Duncan and approved by LaValley.  Bullis was the hearing office who presided over the February 2014 hearing.  These individuals are not named as defendants in this lawsuit.  As presently plead, the Complaint lacks facts suggesting that any named defendant was involved in Plaintiff's initial placement in administrative segregation or the February 2014 hearing.  Consequently, Plaintiff's Fourteenth Amendment Due Process claims related to his initial placement administrative segregation are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

### ii.    June 2014 Rehearing

Plaintiff claims that his Due Process rights were violated during the rehearing process because he was required to remain in the SHU pending his rehearing.  *See* Compl. at 3.

Plaintiff maintains that the outcome of the second hearing was predetermined because a fellow inmate told him, two days prior to the hearing, that Uhler would not allow Plaintiff to "get anything in ad-seg status." *See id.*

In May 2014, Prack reviewed and overturned Bullis' February 2014 decision. The matter was remanded for a rehearing, which took place in June 2014, with Gutwein presiding. Prack, Bullis, and Gutwein are not defendants in this action. Moreover, while Plaintiff claims that Uhler made statements concerning Plaintiff's conditions of confinement in the SHU, the Complaint lacks facts suggesting that Uhler, or any other named defendant, was personally involved in the decision to confine Plaintiff to the SHU pending the rehearing. For the reasons set forth in Part V(B)(1)(b)(i), Plaintiff's Due Process claims related to his rehearing are dismissed without prejudice for failure to sufficiently plead personal involvement.

### iii.    Continued Confinement in Administrative Segregation

"[A]dministrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates." *Hewitt*, 459 U.S. at 477 n. 9. "New York law requires that these reviews be conducted every 60 days in accordance with the following procedure:

> (1) A three-member committee consisting of a representative of the facility executive staff, a security supervisor, and a member of the guidance and counseling staff shall examine the inmate's institutional record and prepare and submit to the superintendent or designee a report setting forth the following: (i) reasons why the inmate was initially determined to be appropriate for administrative segregation; (ii) information on the inmate's subsequent behavior and attitude; and (iii) any other factors that they believe may favor retaining the inmate in or releasing the inmate from administrative segregation."

*Proctor v. LeClaire*, 715 F.3d 402, 405–06 (2d Cir. 2013) (citing 7 N.Y.C.R.R. § 301.4(d)(1)).

15

Periodic reviews should be "substantive and legitimate, not merely a sham. " *Giano v. Kelly*, 869 F. Supp. 143, 150 (W.D.N.Y. 1994). A review is "substantive and legitimate" where the prisoner has an opportunity to relay information or make a statement to the individuals conducting the review and there is some indication that the information is actually considered. *See Edmonson*, 21 F.Supp.2d at 253-54.

Construing the Complaint liberally, Plaintiff claims that his post-hearing reviews were untimely, inaccurate, and that his disciplinary history was "exaggerated." *See* Compl. at 7. Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), Plaintiff's Fourteenth Amendment Due Process claims against Cook, Uhler, Bellnier, Fitchette, and Woodruff related to the post-hearing reviews survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.[13]

### 2.   Pilot Incentive Program

Plaintiff claims that Woodruff and Bellnier violated his Due Process rights when they discontinued the Pilot Incentive Program, which had allowed Plaintiff to receive weekly telephone calls, extra commissary and recreation, sweat pants, shorts, and the opportunity to watch a movie once per month. *See* Compl. at 5; Dkt. No. 1-1 at 79-82. Courts in this Circuit have held that claims of this nature do not represent constitutional challenges because inmates do not have a constitutional right to participate in prison programs. *Boothe v.*

---

[13]     As presently plead, Plaintiff's challenges involve his administrative segregation placement and are considered condition of confinement claims. Therefore, at this juncture, the Court cannot conclude that Plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Leftuhandbull v. Hartley*, No. 09-CV-1345, 2010 WL 1930250, at *6-7 (D.Colo. Apr. 20, 2010).

*Hammock*, 605 F.2d 661, 664 (2d Cir. 1979); *see also Harrison v. Fischer*, No. 08-CV-1327 (NAM/DRH), 2010 WL 2653629, at *8 (N.D.N.Y. June 7, 2010) (reasoning that discharge from prison programming is also not a constitutional violation). Moreover, Plaintiff does not have a cognizable liberty or property interest concerning the loss of his telephone and commissary privileges while in SHU confinement. *See Johnson v. Enu*, No. 08-CV-0158 (FJS/DRH), 2011 WL 3439179, at *12 (N.D.N.Y. July 13, 2011) (citations omitted).

Accordingly, Plaintiff's Due Process claims related to the termination of the Pilot Incentive Program are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

## C.     Substantive Due Process

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . but not against government action that is 'incorrect or ill-advised.' " *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994) (internal quotation marks and citations omitted). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Okin v. Village of Cornwall–On–Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)). "Very few conditions of prison life are 'shocking' enough to violate a prisoner's right to substantive due process. In *Sandin v. Conner*, the Supreme Court provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic drugs." *Samms v. Fischer*, No. 10–CV–349 (GTS/GHL), 2011 WL 3876528, at *12 (N.D.N.Y. Mar.25, 2011) (citations omitted).

In this instance, Plaintiff's administrative segregation status and conditions of confinement are not conscience shocking or oppressive in the constitutional sense. Plaintiff's administrative segregation was based on, among other facts, his alleged violent history. Accordingly, Plaintiff's substantive Due Process claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

**D.    Eighth Amendment Claims**

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

### 1.    Conditions of Confinement

Plaintiff claims that Woodruff, Cook, and Bellnier violated his Eighth Amendment rights when they subjected him to unconstitutional conditions of confinement in the SHU. *See* Dkt. No. 1-1 at 40, 45. The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id.* (citation omitted). "Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to 'basic human needs—e.g., food, clothing, shelter,

medical care, and reasonable safety.' " *Brown v. Doe*, No. 13 Civ 8409, 2014 WL 5461815,

at *6 (S.D.N.Y. Oct. 28, 2014) (quoting, *inter alia, Rhodes v. Chapman*, 452 U.S. 337, 349

(1981)). "[The inmate must show that the conditions, either alone or in combination, pose an

unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d

Cir. 2013) (citation omitted).

With respect to the subjective element, plaintiff must "demonstrate that the defendants

imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation

omitted). "To constitute deliberate indifference, '[t]he prison official must know of, and

disregard, an excessive risk to inmate health or safety.' " *Walker*, 717 F.3d at 125 (quoting

*Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)). In assessing the seriousness of the

conditions of confinement, the Court examines the objective nature of those conditions.

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[T]he deprivation alleged must be, objectively,

sufficiently serious.") (internal quotation marks omitted).

Plaintiff claims that defendants are improperly treating him as a "disciplinary SHU

inmate." *See* Dkt. No. 1-1 at 40. Plaintiff's cell has a plexiglass shield over the door. Plaintiff

does not have a television, cannot purchase items at the commissary, cannot make

telephone calls, and cannot listen to pre-recorded religious services. Id. at 40-41; 44-47; 64.

Essentially, Plaintiff takes issue with the normal conditions of SHU confinement and, thus,

fails to state a constitutional cause of action. *See Sealey v. Giltner*, 197 F.3d 578, 581 (2d

Cir.1999) (holding that valid conditions for confinement include situations where the "inmate

is confined to his cell 23 hours per day, can take no more than three showers per week, has

limited library privileges and no telephone privileges"); *Booker v. Maly*, No. 12-CV-246

(NAM/ATB), 2014 WL 1289579, at *16 (N.D.N.Y. Mar. 31, 2014) ("Restrictive SHU conditions

on their own do not, per se, rise to the level of cruel and unusual punishment."); *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004) ("[O]rdinarily, SHU prisoners are kept in solitary confinement for twenty-three hours a day, provided one hour of exercise in the prison yard per day, and permitted two showers per week.").  Plaintiff's subjective feelings about his cell are not relevant to the Court's inquiry.

Accordingly, Plaintiff's Eighth Amendment claims related to his conditions of confinement are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### 2.    Deliberate Indifference to Serious Medical Needs

Plaintiff allegedly suffers from hypertension, migraines, herpes, hemorrhoid, psoriasis, constipation, and foot pain.  *See* Compl. at 6, 9.  Plaintiff claims that the medical staff refuses to address his conditions and that his treatment is ineffective.  *See id.*  Plaintiff has received medication and undergone colonoscopies.  *See id.*

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need.  *See Farmer*, 511 U.S. at 834.  The objective component of an Eighth Amendment deliberate indifference medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted).  Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Chance v. Armstrong*, 143 F. 3d 698, 703

20

(2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U .S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

Even assuming plaintiff could satisfy the objective element of the Eighth Amendment analysis, plaintiff failed to sufficiently plead that defendants were aware that plaintiff suffered from any medical condition or that plaintiff was at risk of serious harm. Plaintiff claims that he was deprived of adequate medical care and argues that the medical staff and "Dr. Mary Kowalchuk [are] doing nothing to treat his severe headaches[.]"[14] *See* Compl. at 9. However, Dr. Mary Kowalchuk is not a defendant in this action. Further, the Complaint lacks facts suggesting that any of the named defendants were personally involved in Plaintiff's medical treatment. While Plaintiff alleges that Woodruff and Uhler were "aware of all his

---

[14]     Only "persons" may act under the color of state law, a defendant in a § 1983 action must qualify as a "person." The use of the term, "medical department" as a name for alleged defendants, without naming specific staff members, is not adequate to state a claim against a "person" as required in § 1983 actions. *See Ferguson v. Morgan*, No. 90 Civ. 6318, 1991 WL 115759, at *1 (S.D.N.Y. June 20, 1991) (holding that Otisville Correctional Facility medical staff not a person under § 1983); *Fisher v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (concluding that state prison medical department is not a person for purposes of § 1983). Accordingly, to the extent that Plaintiff attempts to assert Eighth Amendment claims against the Medical Department, those claims are  dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

medical and other issues" because they "regularly made rounds in the SHU," Plaintiff has not

plead facts suggesting that he made requests for treatment, when he requested treatment,

the frequency of said requests, and defendants' response, if any to his requests.

Consequently, to the extent that Plaintiff attempts to assert Eighth Amendment medical

claims against Uhler and Woodruff, those claims are dismissed without prejudice pursuant to

28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which

relief may be granted.

### 3.   Threats

"[A]llegations of verbal harassment are insufficient to base a Section 1983 claim if no

specific injury is alleged." *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (citing

*Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)); *Shabazz v. Pico*, 994 F. Supp. 460,

474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by an injury no

matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute

the violation of any federally protected right and therefore is not actionable under  . . . §

1983").  Here, Plaintiff does not allege that he sustained any physical injury as a result of

Cook's threats.  Consequently, Plaintiff's claim that Cook violated his constitutional rights

when she verbally threatened to revoke his privileges, *see* Compl. at 6, is dismissed for

failure to state a claim for relief.

## VI.   Timeliness of Claims

With respect to Plaintiff's claims that arose prior to August 2014, the issue of

timeliness must be addressed.  Section 1983 actions, the applicable statute of limitations is

the State's 'general or residual [state] statute [of limitations] for personal injury actions[.]' "

*Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488

U.S. 235, 249-50 (1989)).  In New York, a three-year statute of limitations applies for personal injury actions and thus to Section 1983 actions.  N.Y. C.P.L.R. § 214(5).  Although state law provides the relevant limitations period, federal law determines when a Section 1983 action accrues, which has been held to be the time "when the plaintiff knows or has reason to know of the harm."  *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (quotation omitted); *see also Covington v. City of New York*, 916 F. Supp. 282, 285 (S.D.N.Y. 1996) (quotation omitted) (same).  "Thus, in determining when the statute begins to run, the proper focus is on the time of the [wrongful] act, not the point at which the consequences of the act become painful."  *Covington*, 916 F.Supp. at 285 (internal quotation marks omitted).

The continuing violation doctrine provides that "[w]hen the plaintiff brings a Section 1983 claim challenging a discriminatory policy, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it".  *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (internal quotation marks omitted).  "To invoke the doctrine, a plaintiff must show (1) a specific ongoing discriminatory policy or practice, or (2) specific related instances of discrimination that are permitted to continue unremedied for so long as to amount to a discriminatory policy or practice."  *Harris v. City of N.Y.*, 325 F.3d 243, 248 (2d Cir. 1999).  The Supreme Court has made clear that the continuing violation doctrine does not apply to discrete acts but only to ongoing circumstances that combine to form a single violation that cannot be said to occur on any particular day.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-15 (2002).

On August 21, 2017, plaintiff signed the Complaint in this action.  *See* Compl. at 21. Therefore, to be considered timely filed, any Section 1983 claim must have accrued no earlier

that August 21, 2014.[15]  In light of Plaintiff's pro se status, the Court has considered whether

Plaintiff's Fourteenth Amendment claims that arose prior to that date might benefit from the

continuing violation doctrine.  In this case, Plaintiff claims that his due process rights were

violated during the February 2014 hearing for his initial placement in administrative

segregation and the June 2014 rehearing.  Plaintiff's claims are based upon his continuous

confinement in administrative segregation from January 2014 until the present.  Accordingly,

at this juncture, Plaintiff's has adequately asserted a continuing violation of his rights, for the

purposes of the statute of limitations to survive sua sponte review.  *See Edmonson*, 21

F.Supp. 2d at 246 (applying the continuing violation doctrine to the plaintiff's claims based

upon his continuous administrative segregation confinement) (citation omitted); *see Gonzalez

v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011) ("A statute of limitations provides an affirmative

defense, and the burden is on the defendant to establish when a federal claim accrues.")

(citation omitted)).  Defendants are, of course, free to assert the defense in a responsive

pleading or by motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## VII.    MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Construing Plaintiff's submission with the special solicitude required, Plaintiff moves for

an Order directing defendants to transfer him to the general population.  *See* Dkt. No. 4 at 10.

In the alternative, Plaintiff seeks any Order directing defendants to provide him with the

following: daily access to the telephone; personal clothes; four hours of recreation per day; a

chin-up bar; a basketball and hoop; a television; full commissary privileges; permission to

---

[15]      Under the "prison mailbox rule," the date of filing is deemed to be the date that the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumed to be the date that the complaint was signed. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2011) (citation omitted).

participate in programming including the family reunion program; a typewriter; an extra visit each week; five showers per week; a tape with pre-recorded Muslim services; a cold diet; and a front cuff order without waist chains/shackles; and adequate medical care. *See id.* at 10-11.

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (*citing Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted)); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n,*

*AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31, 2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

Assuming for purposes of this motion that Plaintiff alleges that he may suffer irreparable harm, Plaintiff fails to demonstrate with evidence in admissible form a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *See Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Res., Inc.*, 792 F. Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Additionally, since defendants have not yet answered, and, indeed, have not even been served in the action, the Court cannot ascertain Plaintiff's likelihood of success. Accordingly, Plaintiff's motion for preliminary injunctive relief (Dkt. No. 4) is denied.

## VIII.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**;[16] and it is further

---

[16]    Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915[17]; and it is further

**ORDERED** that the Clerk of the Court provide a copy of Plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that Plaintiff's § 1983 claims for monetary damages against defendants in their official capacity are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Fourteenth Amendment Due Process claims related to Plaintiff's initial placement in administrative segregation, the June 2014 rehearing, and the Pilot Incentive Program; (2) Fourteenth Amendment substantive Due Process claims; (3) Eighth Amendment claims related to Plaintiff's conditions of confinement; (4) Eighth Amendment claims related to Plaintiff's serious medical needs; and (5) Eighth Amendment claim against Cook related to threats;[18] and it is further

---

[17]     "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010) (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[18]     If Plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

ORDERED that Plaintiff's Fourteenth Amendment Due Process claims related to his continued confinement in administrative segregation against Cook, Uhler, Bellnier, Fitchette, and Woodruff survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and requires a response; and it is further

ORDERED, that upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue a summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon the defendants. The Clerk shall forward a copy of the summonses and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

ORDERED, that a response to the Complaint be filed by the defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

ORDERED, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any**

**change in his address; their failure to do so will result in the dismissal of his action**;

and it is further

      **ORDERED** that Plaintiff's motion for a preliminary injunction (Dkt. No. 4) is **DENIED**;

and it is further

      **ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on

Plaintiff in accordance with the Local Rules.

Dated:       November 3, 2017
              Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge