UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TYRONE WALKER,

Plaintiffs,

v.

9:17-CV-1008 (GTS/CFH)

JOSEPH BELLNIER, et. al.,

Defendants.

---

APPEARANCES:

TYRONE WALKER
94-A-5258
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

GLENN T. SUDDABY
Chief United States District Judge

**DECISION AND ORDER**

## I. INTRODUCTION

Pro se plaintiff Tyrone Walker ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1 ("Compl."). The incidents that formed the basis for the action allegedly occurred while Plaintiff was confined at Upstate Correctional Facility ("Upstate C.F."). *See id., generally*. By Decision and Order filed on November 3, 2017 (the "November Order"), this Court granted Plaintiff's IFP application and reviewed the sufficiency of the Complaint in

accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. Dkt. No. 5. On the basis of that review, Court dismissed the following, without prejudice: (1) Fourteenth Amendment Due Process claims related to Plaintiff's initial placement in Administrative Segregation and the Pilot Incentive Program; (2) Fourteenth Amendment substantive Due Process claims; (3) Eighth Amendment claims related to Plaintiff's conditions of confinement; (4) Eighth Amendment claims related to Plaintiff's serious medical needs; and (5) Eighth Amendment claims related to threats.[1] *See id.* at 27. The Court ordered defendants Melissa A. Cook ("Cook"), Donald Uhler ("Uhler"), Joseph Bellnier ("Bellnier"), Joanne Fitchette ("Fitchette"), and Paul P. Woodruff ("Woodruff") to respond to Plaintiff's Fourteenth Amendment Due Process claims related to his continued confinement in Administrative Segregation.[2] *See id*. at 28.

Presently before the Court is Plaintiff's Amended Complaint.[3] Dkt. No. 8 ("Am. Compl.").

## II. SUMMARY OF AMENDED COMPLAINT[4]

On January 17, 2014, Plaintiff was placed in the Special Housing Unit ("SHU") based upon an Administrative Segregation Recommendation and remained in the unit pending a

---

[1] The Court dismissed Plaintiff's § 1983 claims for monetary damages against defendants in their official capacity with prejudice. *See* Dkt. No. 5 at 27.

[2] Defendants have not filed an answer.

[3] In lieu of the forms required for service of the Complaint, Plaintiff filed the Amended Complaint.

[4] The Amended Complaint includes eighty-three pages of exhibits. *See* Dkt. No. 8-1. To the extent that the exhibits are relevant to the incidents described in the Amended Complaint, the Court will consider the Amended Complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference). These exhibits were previously annexed to the original pleading. *Compare* Dkt. No. 1-1 and Dkt. No. 8-1.

hearing. Am. Compl. at 3. Plaintiff's hearing was completed 2 ½ months after the recommendation was issued. *Id*.

In August 2014, Plaintiff filed a grievance complaining that he was being treated like an inmate on "SHU status." Dkt. No. 8-1 at 4. On August 19, 2014, the Inmate Grievance Resolution Committee ("IGRC") issued a response denying the grievance reasoning that Plaintiff was receiving privileges in accordance with DOCCS' Directive #4933, section 304.1.[5] *Id.* at 5.

On April 12, 2016, Plaintiff sent a letter to the Administrative Segregation Review Committee ("ASRC") claiming that his periodic administrative reviews were untimely, based upon false information, and essentially, "a farce." Am. Compl. at 3; Dkt. No. 8-1 at 14-17. Plaintiff claimed that Woodruff "made it clear" that he would not be released from Administrative Segregation for two to three years. Dkt. No. 8-1 at 14-17. Plaintiff objected to Cook's role in the review process. *Id*.

In May 2016, Plaintiff filed a grievance asking for permission to return to the general population. Am. Compl. at 3; Dkt. No. 8-1 at 8. During interviews, Woodruff and Cook told Plaintiff that he would not be released from the SHU. Dkt. No. 8-1 at 8. The IGRC denied Plaintiff's grievance and Plaintiff appealed. *Id*. at 9. Sandra Danforth ("Danforth"), the Acting Superintendent at Upstate C.F., issued a decision concurring with the IGRC.[6] *Id*. at 10.

---

[5] Directive #4933 is entitled "Special Housing Units." The IGRC noted that section 304.1 provides:

> . . . administrative segregation inmates housed in SHU will be subject to the same rules as those inmates who have completed thirty days of satisfactory adjustment. Further, an inmate in administrative segregation shall have such status reviewed every sixty days.

Dkt. No. 8-1 at 5.

[6] Danforth is not a defendant herein.

On July 4, 2016, Plaintiff sent a letter to Uhler and the ASRC claiming that he did not receive his March 2016 review. Am. Compl. at 3; Dkt. No. 8-1 at 18-23. Plaintiff complained that the reviews were a "sham" and that Woodruff had no intention of allowing Plaintiff to leave the SHU. Dkt. No. 8-1 at 18-23.

On February 17, 2017, Plaintiff received an Administrative Segregation Review dated August 17, 2016. Am. Compl. at 3; Dkt. No. 8-1 at 24. The three member committee, including Cook and Fitchette, reviewed Plaintiff's status and determined that continued confinement was appropriate. Dkt. No. 8-1 at 24.

On April 20, 2017, Woodruff issued a memorandum to inmates in Administrative Segregation advising that the Pilot Incentive Program was discontinued. Am. Compl. at 4; Dkt. No. 8-1 at 29. The program allowed Plaintiff to watch one movie each month. Am. Compl. at 4. On April 21, 2017, Plaintiff wrote to Woodruff asking him to reinstate the program. Dkt. No. 8-1 at 31-32.

On June 22, 2017, Plaintiff wrote to Bellnier complaining that the August 2016 review was the last review he received. Am. Compl. at 5; Dkt. No. 8-1 at 74. Plaintiff objected to the decision to discontinue the Pilot Program. Dkt. No. 8-1 at 75.

On August 4, 2017, Plaintiff received an Administrative Segregation Review dated January 30, 2017. Am. Compl. at 4; Dkt. No. 8-1 at 34-36. On February 9, 2017, a three member committee, including Fitchette, found that continued segregation was appropriate. Dkt. No. 8-1 at 34-36. On July 31, 2017, the recommendation was approved. *Id.* at 34-36.

On October 1 2017, Plaintiff received an Administrative Segregation Review dated June 12, 2017. Am. Compl. at 6; Dkt. No. 8-1 at 76. The review was completed on September 25, 2017. *Id*. The committee cited to Plaintiff's "unpredictable behavior and

violence" and concluded that he posed a "threat to the security and safety of himself, the facility and population" if he returned to general population. Dkt. No. 8-1 at 77.

Construing the Amended Complaint liberally, Plaintiff asserts the following: (1) Fourteenth Amendment Due Process claims related to Plaintiff's initial placement in Administrative Segregation; (2) Fourteenth Amendment Due Process claims related to Plaintiff's continued confinement in Administrative Segregation; (3) Fourteenth Amendment Equal Protection claims; and (4) constitutional claims based upon DOCCS' Directive #4933.[7] *See* Am. Compl., *generally*.

## III. ANALYSIS

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. §1915A(b) was discussed at length in the November Order and it will not be restated in this Decision and Order. *See* Dkt. No. 5 at 2-4. The Court will construe the allegations in the Amended Complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to a less stringent standards than formal pleadings drafted by lawyers.").

### A. Eleventh Amendment

The law relating to Eleventh Amendment immunity was discussed in the November Order and will not be restated herein. *See* Dkt. No. 5 at 10-11. In the Amended Complaint, Plaintiff restates his claims for money damages pursuant to Section 1983 against Bellnier in his official capacity. *See* Am. Compl. at 2. This claim was previously dismissed, with prejudice, and thus, Plaintiff's attempt to replead is improper.

---

[7] Plaintiff does not reallege the following previously dismissed causes of action: (1) Fourteenth Amendment Substantive Due Process claims; (2) Eighth Amendment claims related to the conditions of his confinement; (3) Eighth Amendment claims related to his medical needs; and (4) Eighth Amendment claims related to threats.

**B. Procedural Due Process**

The law related to Fourteenth Amendment Due Process claims and personal involvement was discussed in the November Order and will not be restated herein. *See* Dkt. No. 5 at 11-16.

**1. Initial Placement in Administrative Segregation**

In the November Order, the Court dismissed Plaintiff's Due Process claims related to his initial placement in Administrative Segregation for failure to plead personal involvement. The Court explained:

> The administrative segregation recommendation was issued by Duncan and approved by LaValley. Bullis was the hearing officer who presided over the February 2014 hearing. These individuals are not named as defendants in this lawsuit. As presently plead, the Complaint lacks facts suggesting that any named defendant was involved in Plaintiff's initial placement in administrative segregation or the February 2014 hearing.

Dkt. No. 5 at 14.

Despite being given the opportunity to amend the Complaint, Plaintiff has failed to plead facts suggesting that any named Defendant was personally involved in Plaintiff's initial placement in Administrative Segregation. For the reasons set forth in the November Order, Plaintiff's Fourteenth Amendment Due Process claims related to his initial placement Administrative Segregation are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

**2. Continued Confinement in Administrative Segregation**

In the November Order, the Court directed Cook, Uhler, Bellnier, Fitchette, and Woodruff ro respond to Plaintiff's Fourteenth Amendment Due Process claims related to his

continued confinement in Administrative Segregation and post-hearing reviews. Dkt. No. 5 at 16. These claims are repeated in the Amended Complaint and thus, survive review and require a response.

**C. Equal Protection**

Plaintiff claims that inmates confined to Disciplinary Segregation are provided with the opportunity to re-enter general population. *See* Am. Compl. at 5. Additionally, these inmates receive "4 total out of cell time," time cuts, mental exercises, congregate recreation, access to televisions and telephones, and permitted five showers per week. *See id.* Plaintiff also alleges that these inmates are allowed to participate in programming. *See id.* Construing the Amended Complaint liberally, Plaintiff claims that Defendants violated his Fourteenth Amendment right to Equal Protection because was not afforded the same privileges as inmates in Disciplinary Segregation. *See id.*

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. *City of Cleburne, Tex. v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." *Myers v. Barrett*, No. 95-CV-1534 (RSP/GJD), 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997 (citation omitted). In addition, a valid equal protection claim may be brought by a "class of one," "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook*

*v. Olech*, 528 U.S. 562, 564 (2000); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005). "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006.)

Here, Plaintiff attempts to allege a "class-of-one" claim. *See Brown v. Nix*, 33 F.3d 951, 954 (8th Cir. 1994) ("Prisoners do not have a fundamental right to be free from administrative segregation."). The allegations in the Amended Complaint however, do not suggest that "similarly situated" inmates in Administrative Segregation were treated differently than Plaintiff. Plaintiff cites to differences between two groups of segregated inmates—inmates who were in administrative segregation and those who were in disciplinary segregation, that distinction does not suggest that Plaintiff suffered an Equal Protection violation. *Taylor v. Halladay*, No. 9:09-CV-0385, 2010 WL 3120036, at *9 (N.D.N.Y. July 1, 2010). Plaintiff has not compared himself to inmates with similar disciplinary histories in similar confinement. *See Muhmmaud v. Murphy*, No. 3:08-CV-1199, 2009 WL 4041404, at *11 (D.Conn. Nov. 19, 2009) (reasoning that inmates in Administrative Segregation are not similarly situated with inmates confined in the Chronic Discipline program). Moreover, courts have "recognized that a rational basis exists for treating inmates confined in administrative segregation differently than other inmates." *Taylor*, 2010 WL 3120036, at *9 (*citing Hameed v. Coughlin*, 37 F.Supp.2d 133, 137 (N.D.N.Y. 1999)). Accordingly, Plaintiff's Equal Protection claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure state a claim upon which relief may be granted.

**D. Violation of DOCCS' Directives**

Plaintiff claims that defendants violated DOCCS' Directive #4933. *See* Am. Compl. at 1. A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim). "A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Cusamano v. Sobek*, 604 F.Supp.2d 416, 482 (N.D.N.Y. 2009) (collecting cases); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . ."); *Fluent v. Salamanca Indian Lease Auth*., 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles). Failure to follow a DOCCS' Directive does not give rise to a § 1983 claim. Accordingly, to the extent that Plaintiff attempts to assert a cause of action against any defendant based upon the failure to follow DOCCS' directives, these claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014).

**VI. CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the Amended Complaint (Dkt. No. 8) is accepted for filing and is deemed the operative pleading; and it is further

**ORDERED** that the following claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Plaintiff's § 1983 claims for monetary damages against defendants in their official capacity; (2) Fourteenth Amendment Due Process claims based upon Plaintiff's Initial Placement in Administrative Segregation; (3) Fourteenth Amendment Equal Protection claims; and (4) claims based upon the violation of DOCCS' directives; and it is further

**ORDERED** that Plaintiff's Fourteenth Amendment Due Process claims related to his continued confinement in Administrative Segregation and post-hearing reviews survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response; and it is further

**ORDERED**, that the Clerk shall issue a summonses and forward them, along with copies of the Amended Complaint, to the United States Marshal for service upon the defendants. The Clerk shall forward a copy of the summonses and Amended Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the Amended Complaint be filed by the defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of**

**same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

Dated: January 9, 2018
Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge