UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYRONE WALKER, # 94A5258<br>        Plaintiff,<br><br>-against-<br><br>JOSEPH BELLNIER; JAMES O'GORMAN;<br>DONALD UHLER; PAUL P. WOODRUFF;<br>JOANNE FITCHETTE; MELISSA A. COOK,<br>        Defendants. | PLAINTIFF'S<br>STATEMENT OF MATERIAL FACTS<br><br>17-CV-1008<br><br>GTS/CFH |

## PLAINTIFFS STATEMENT OF UNDISPUTED FACTUAL ISSUES TO SUPPORT SUMMARY JUDGEMENT

The Plaintiff moves for Summary Judgment based on his civil rights action under 42 U.S.C. Section 1983, for damages based on a violation of Plaintiff's Fourteenth Amendment Constitutional Right. The Defendants' has subjected Plaintiff to atypical and significant hardship violating his liberty interest due process right. He is being held in administrative segregation status without meaning reviews, often no reviews at all, or so late it undermines the Ad-Seg Review process, or blantantly false information is inserted into the Ad-Seg Review.

Pursuant to 7.1 (3) Summary Judgment Motions, the Plaintiff submits his statement of undisputed material fact with specific citations to the record where the fact is established. There are no genuine issues to dispute; therefore, Plaintiff's motion should be granted in it's entirety.

1. Whether the Plaintiff is currently an Ad-Seg inmate at Upstate Correctional Facility. (Dkt. No. 31)

2. Whether Plaintiff is required to receive a review for his current Ad-Seg status every 30 days according to Directive 4933. (Affidavit Exhibit 1)

3. Whether Plaintiff's 8-17-16 Ad-Seg Review was completed on 2-10-17. (Dkt. No. 31 Exhibit 3)

4. Whether Plaintiff's 1-30-17 Ad-Seg Review was completed on 7-31-17 (Dkt. No. 16 Exhibit 1)

5. Whether Plaintiff's June, 12, 2017 Ad-Seg review was completed on 9-25-17 (Dkt. No. 31 Exhibit 6)

6. Whether Plaintiff received 9 Ad-Seg reviews on the same day, that's stamped January, 22, 19 (Dkt. No. 31 Exhibit 7)

7. Whether Plaintiff's 9 Ad-Seg reviews received on the same day totalled over 3,000 days of being late and not in compliance with Directive 4933 (Dkt. No. 31 #21 and Exhibit 7)

8. Whether Plaintiff received time-cuts in Clinton Correctional facility from Superintendent Dale Artus, Deputy Superintendent of Security S. Racette, Deputy Superintendent S. Brown and Superintendent T. LaValley totalling over a year in S.H.U. and Keeplock time reduction. (Affidavit Exhibit 2)

9. Whether the Plaintiff completed the ART Program receiving an average evaluation in all areas (Affidavit Exhibit 3)

10. Whether the Plaintiff was on a restraint order, being required to wear restraints in the exercise cages and the visits while at Clinton Correctional facility and Plaintiff accused the administration of being white racist savages to make

2

Plaintiff's life a living hell based on the restraints being imposed. (Affidavit Exhibit 4).

11. Whether Plaintiff filed a preliminary injunction for inadequate clothing and restraints in the exercise area at Clinton Correctional Facility which ultimately resulted in Plaintiff being transferred and rendered the issue moot. (Affidavit Exhibit 5).

12. Whether the Plaintiff sought to obtain the CAD (Kosher) diet in a lawsuit and was denied and never been on a CAD (Kosher diet). (Affidavit Exhibit 4)

13. Whether the Plaintiff filed a lawsuit, seeking to be removed from his restraint order at Clinton Correctional facility. (Affidavit Exhibit 4)

14. Whether the Plaintiff sought a transfer from Clinton Correctional Facility on more than one occasion. (Affidavit Exhibit 4)

15. Whether the Plaintiff filed multiple lawsuits at Clinton Correctional Facility (Affidavit Exhibit 4)

16. Whether the Plaintiff was given a weapon charge for a mirror that Deputy Superintendent S. Brown and Superintendent LaValley refer to as plexiglas (plastic). (Affidavit Exhibit 4)

17. Whether the Plaintiff's plastic mirror was absent of a sharp point. (Affidavit Exhibit 4)

18. Whether the Plaintiff received a misbehavior report for seeing a piece of metal on the floor and giving it to the Captain at Clinton Correctional facility. (Affidavit Exhibit 6).

19. Whether the Plaintiff was found guilty of bribery for seeking a reward for his good behavior and good deed of giving the Captain a piece of metal he found on the floor (Affidavit Exhibit 6)

20. Whether based on Plaintiff's Security Classification and CMC status, the Plaintiff's transfers anywhere outside the facility is done with DOCCS CERT security unit and the Plaintiff is never notified in advance when he is being transferred outside the facility. (Affidavit Exhibit 6)

21. Whether the Plaintiff had no acts of violence with correctional staff or inmates in the S.H.U. over the last 19 years that resulted in a misbehavior report or unusual incident report (Affidavit Exhibit 13).

22. Whether Plaintiff's Ad-Seg Review statement states "Walker has proved his ability to obtain and craft weapons and to manipulate his environment; he purposefully obtained or created a weapon in February, 2014, while still at Clinton Correctional Facility after he found out he was being transferred to Upstate Correctional Facility. He knew possession of such contraband would result in a Tier III disciplinary action and believed that this would cause his transfer to be cancelled." is a lie and there are no documents to support what the Plaintiff believed or say why he did anything. (Affidavit Exhibit 6)

23. Whether the statement in #22 exist in Plaintiff's 12-4-15, 2-16-16, 6-12-17, 11-07-17 and 12-5-17 Ad-Seg reviews. (Affidavit #12 and Exhibit 6)

24. Whether the statement in #22 was addressed in Plaintiff's 4-12-16 and 7-4-16 Ad-Seg Statements and never responded to in any Ad-Seg review (Dkt. No. 31 Exhibit 3)

4

25. Whether the Plaintiff received a misbehavior report on 9-27-2000 for a weapon in Green Haven Correctional Facility and was transferred to Great Meadow Correctional Facility where his hearing for his misbehavior report was completed. (Affidavit Exhibit 14)

26. Whether Plaintiff's Ad-Seg Review Statement states; the Plaintiff attacked the Deputy Superintendent of Security for no reason that he was in blind rage, is a misstatement (to state wrongly or falsely) (Dkt. No. 14 P. #13)

27. Whether the Defendants acknowledged the Plaintiff was motivated by religious complaints when he brutally assaulted the Green Haven Deputy Superintendent of Security. (Dkt. No. 14 P. 13)

28. Whether the Defendants claim Plaintiff's attack was a blind rage with no outward motive, according to Plaintiff exist in Plaintiff's 12-4-15, 1-25-16, 6-27-16, 1-30-17, 6-16-17, 11-7-17 and 12-05-17 Ad-Seg reviews (Affidavit #13 and Exhibit 7)

29. Whether this rage was expressed in a claim of wanting to assault the Deputy Superintendent of Security because the DSS wouldn't pay for Plaintiff's property to be sent home Dkt. No. 31 Exhibit 7  2-28-18 and 5-22-18 Ad-Seg Reviews)

30. Whether Plaintiff was allowed to send his property home because the DSS extended the Plaintiff a courtesy and didn't allow the visiting room to dispose of Plaintiff's property as noted on the disposal form when Plaintiff's visitor forgot to pick-up the property when she left the visit, and the 14 day period expired. (Affidavit #13 and Exhibit 7)

31. Whether Plaintiff expressed gratitude to the DSS on numerous occasions for addressing Plaintiff's issues he brought to his

5

attention (Affadvit #25 Exhibit 16   Admisson #15)

32. Whether the Defendants acknowledge that if the Plaintiff threatened to harm correctional staff he would be issued a misbehavior report and the DSS state in the 4 years that he's known inmate Walker, he don't believe that he has threatened to cause physical harm to any correctional staff. (Affidavit Exhibit 6 Interrogatories #16 and 17)

33. Whether Plaintiff's Ad-Seg statement concerning his 9 Ad-Seg reviews dated 1-26-19 was never answered in the Ad-Seg review response (Dkt. No. 31 Exhibit 7 and 8)

34. Whether Plaintiff's Defendants all expressed they don't know why Plaintiff received 9 reviews at one time and they don't know if the Directive supports that. (Affidavit Exhibit 6 Interrogatories #10)

35. Whether the Plaintiff raised concerns about being subject to an illegal cell shield in his 4-12-16, 7-4-16 and 6-2-17 statement and it was never responded to in the Ad-Seg reviews responses (Dkt No. 31 Exhibits 3 and 6)

36. Whether the DSS admits there are unruly inmates at Upstate Correctional facility and uncontrollable, and they keep the plexiglas on the cell doors to protect the correctional staff and nurses from having something thrown on them. (Affidavit Exhibit 17 Admissions Genuineness of Documents #1a, Exhibit 9 DSS Admissions and Responses)

37. Whether the Superintendent Claim Section 1 Operations(F) governs Expanded vision panels in Directive 4933 at Upstate Correctional Facility (Affidavit Exhibit 9)

38. Whether Directive 4933 state in Section 1 Operation, that Sections 1-111 do not appear in Title 7 (meaning 4933) and

the Secretary of State, states there is no such regulation within Title 7 of the New York Code, Rules and Regulations. Chapter VI pertains to Special Housing Units but does not contain a Section 1 or a Section titled "Operations." (Affidavit Exhibit 9 and Exhibit 1).

39. Whether the Plaintiff's 12-04-18 Ad-Seg Review recommended that Plaintiff take the ART and ASAT program for an eventual transition to a less restrictive environment (released from Ad-Seg). (Dkt. No. 31 Exhibit 7 12-4-18 Ad-Seg Review).

40. Whether the Defendants 6-17-2019 Ad-Seg Review states ASAT do not have a workbook program so the Plaintiff can't participate in it now. (Affidavit Exhibit 10).

41. Whether Plaintiff's 7-16-2019 Ad-Seg Review states: "Inmate Walker keeps his cell in good order and maintains good personal hygiene. Inmate Walker has had maintained appropiate behavior and it is reported that he continues with his self-studies. OMH staff and medical raised no concerns during this report period. Inmates Walker's interactions with staff are appropiate. Inmate Walker is currently a PIMS level III. Inmate utilizes his phone and visitation privileges, his last visitor being on July, 14, 2018. He successfully completed the ART workbook program on 5-19-2019. He continues to participate in cell study." (Affidavit Exhibit 10).

42. Whether the Plaintiff is muslim and addressed his desire to be able to participate in Jumuah religion while in S.H.U. being able to listen to a pre-recorded Khutbah during Jumuah Service in Plaintiff 4-12-16 and 7-4-16 Ad-Seg Statements and the Ad-Seg Review Committee never responded to it (Dkt. No. 31 Exhibit 3 Ad-Seg Statements).

43. Whether the Plaintiff wrote complaints based on Fitchette denying Plaintiff access to the court by way of denying

7

Plaintiff legal copies for the case and the Defendants never responded to Plaintiff's issue in their review responses. (Dkt. No. 31 Exhibit 7  9-6-2018 and 1-26-19 Ad-Seg Statements, and 3-13-2019 Ad-Seg statement).

44. Whether the DSS states Plaintiff did not threaten to cause harm to any Correctional staff while he existed at Upstate Correctional Facility and if he had he would have been issued a misbehavior report. (Affidavit Exhibit 6  interrogatories 16 and 17)

45. Whether Plaintiff's health has deteriorated over the 19 years he has been in S.H.U.; namely, his vision has weakened, his immune system has weakened, he has chronic Plantar fasciitis in which he wears medical boots for, he has severe internal hemorrhoids and he has gastrointestinal problems (Dkt. No. 31 Exhibit 10; Dkt. No. 16 Exhibit 2)

46. Whether Plaintiff's Ad-Seg Review states a colonoscopy has been scheduled for Walker, meanwhile a year and a half has passed and the Plaintiff has not had a colonoscopy done yet. (Affidavit Exhibit 8  2-26-2019 Ad-Seg Review)

47. Whether Plaintiff's Ad-Seg Review 12-3-19 states Plaintiff complains about his Kosher diet; meanwhile the Plaintiff has never been on a Kosher Diet (Affidavit Exhibit 4 and 12)

48. Whether Plaintiff don't have a written complaint based on the Controlled "A" High Fiber Diet he exist on for at least 6 months prior to 12-3-19 (Affidavit Exhibit 12)

49. Whether Plaintiff's Ad-Seg reviews for at least the last three years states inmate Walker maintains good personal hygiene, his cell is acceptable and his interactions with staff appropiate (See Ad-Seg Reviews for last 3 years).

50. Whether the Ad-Seg Committee has suggested the possibility of a less restrictive environment on numerous occasions based on Plaintiff's good behavior. (Exhibit 18 Ad-Seg Reviews Aff.)

51. Whether the plexiglas on the cell door is removable and can be opened if unlocked and the Plaintiff is not on a deprivation order (Exhibit 17 Admissions, 4, 13, 26, 27 Aff.)

52. Whether OSS acknowledged the Plaintiff has expressed gratitude to him for certain past occasions (Exhibit 16 Admissions #15 Aff.)

53. Whether Plaintiff received a misbehavior report for a weapon on 9-27-00 in Green Haven Correctional Facility and was transferred the same day to Great Meadow Correctional Facility (Exhibit 14 Misbehavior Report and Locator System Sheet Aff.)

54. Whether the Plaintiff has a propensity to litigate being that he has consistently litigated his grievances for over 11 years (Exhibit 4 Aff.)

55. Whether the Plaintiff was told by the Ad-Seg Committee that if he did ART and ASAT it could better prepare him for eventual transition to a less restrictive environment. (Dkt. No. 31 Exhibit 7 12-4-18)

56. Whether when the Plaintiff completed ART the Ad-seg Committee told him "Release from Ad-Seg for inmate Walker will require a level of humility and remorse that has thus far not been demonstrated. There is no formula or benchmark for such a demonstration - only personal growth. This is a high bar to demand for release from Ad-Seg, but the cost of an untimely release could be the lives of other inmates or correctional staff. While the committee recognizes the conundrum inherent in requiring a demonstration of growth and non-violent problem-solving while continuing administrative segregation due to the risk of violence

9

57. inherent in the subject, we are unable to recommend step-down to a less restrictive environment." (Affidavit Exhibit 10 6-17-2019 Ad-Seg Review).

58. Whether the Plaintiff's 12-27-17 Ad-Seg Statement the Plaintiff expresses he regrets assaulting correctional staff, that he exercised poor judgment he would never do it again. That Plaintiff didn't know how to litigate, now that he know how to litigate he resolve his issues through the litigation process. (Dkt. No. Exhibit 9, 12-27-17 Statement).

59. Whether litigating is a non-violent problem-solving mechanism available to the Plaintiff.

60. Whether the Plaintiff raised the issue that due to his medical issues he don't pose a threat as he once did in the past and that should be taken in consideration in an Ad-Seg statement and the Administration never responded to it in their review. (Dkt. No. 31 Exhibit 9, 12-27-17 Ad-Seg Statement)

61. Whether Directive 4933 Section 305.5(a) states: "In those SHU cells that have only one solid door, the fixed vision panels will be maintained with the solid metal hatch covering's in an "opened position" unless a deprivation order is issued. A deprivation order to close such hatch coverings may be imposed only where there is a threat to the safety of staff, inmates or State property." (Affidavit Exhibit 1 Directive 4933).

Dated: August 12, 2020
Malone New York

Tyrone Walker
Tyrone Walker 94A5258
Upstate Correctional Facility
P.O. Box 2001
Malone, N.Y. 12953