UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

|                                                          |                                                    |
|----------------------------------------------------------|----------------------------------------------------|
| TYRONE WALKER, #94A5258                                  | AFFIDAVIT IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| Plaintiff                                                |                                                    |
| -against-                                                | 17-CV-1008                                         |
| JOSEPH BELLNIER; JAMES A. O'GORMAN; DONALD UHLER; PAUL P. WOODRUFF; JOANNE FITCHETTE; MELISSA A. COOK, Defendants. | GTS/CFH |

STATE OF NEW YORK )
COUNTY OF FRANKLIN ) SS.:
TOWN OF MALONE )

I, Tyrone Walker, being duly sworn deposes and says:

1. I am the Plaintiff in the above-entitled case. I make this affidavit in support of Plaintiff's motion for summary judgement.

2. This is a civil action brought under 42 U.S.C. Section 1983, for damages based on a violation of Plaintiff's Fourteenth Amendment Constitutional Right. The Defendant's has subjected Plaintiff to atypical and significant hardship violating his liberty interest due process right. He is being held in administrative segregation status (solitary confinement) without meaningful reviews, often no reviews at all, or reviews so late it undermines the process and Plaintiff has been denied the process to be heard. Then reviews also contain false information and done in a rote, sham, perfunctory, and hyperbole manner.

3. The Plaintiff's verified Pleading Docket Number 31 including the exhibits is also a part of this Affidavit.

4. The Plaintiff is entitled to summary judgement because there are no dispute in the genuine issues of material facts. The facts are set out in this affidavit.

5. The Plaintiff's Administrative Segregation status is defined by Directive 4933 and it mandates in 2016 that the inmates in Ad-Seg status be reviewed every 60 days, and that the inmate can write a statement regarding the need for continued Ad-Seg status and this statement will be considered during the next scheduled review. The Directive 4933 Section 301.D is where this information exist. However, in April, 18, 2017 this rule will be revised and Section 301.4-d would mandate the review will be every 30 days. (Attached (Exhibit 1 Aforementioned Sections of Directive)

6. The Plaintiff's 8-17-16 Ad-Seg review was completed on 2-10-17 and the Plaintiff did not receive it until 2-17-17 (over 6 months later). Plaintiff's 1-30-17 Ad-Seg Review was completed on 7-31-17 and the Plaintiff did not receive it until 8-4-17 (over 6 months later). Plaintiff's June, 12, 2017 Ad-Seg review completed on 9-25-17 and the Plaintiff did not receive it until 12-27-17 (over 6 months later). From 8-17-16 to 12-27-17 the Plaintiff either received over a year of late reviews or no reviews at all. (Dkt. No. 31 Comp. # 16, 19 and exhibits 3 and 6 also DKt. No. 16 exhibit 1)

7. On January, 24, 2019 the Plaintiff would receive 9 Ad-Seg reviews dated 9-12-17, 10-10-17, 11-07-17, 12-05-17, 1-03-18, 1-31-18, 2-28-18, 3-27-18 and 5-22-18. They are all stamped Upstate C.F. Executive Office Jan. 22-19 which indicate when the facility received them. The Plaintiff deducting the 30 days allotted for the Ad-Seg review to be completed and the total number of days the 9 late reviews came up to 3,417 days that's about 9½ years. (DKt. No. 31 Exhibit # 7)

2

8. The Superintendent Dale Artus gave the Plaintiff a 75 day time-cut of Keeplock time and 3 months S.H.U. time on May, 5, 2009. Then on 9-25-09 he gave the Plaintiff a 3 month S.H.U. time-cut. Then On 8-12-10 the Deputy Superintendent of Security S. Racette gave Plaintiff a 6 month S.H.U. time-cut. Then the Deputy Supt. of Security S. Brown would give Plaintiff a 2 month S.H.U. time-cut on 10-22-12. Then he would give Plaintiff a 1 month time-cut on 4-8-13. Then he would give Plaintiff a 1 month time-cut on 6-10-2013. Then he would give the Plaintiff a 1 month time-cut S.H.U. on 7-26-2013. On 11-25-2013 the Superintendent T. LaValley would give Plaintiff a 1 month S.H.U. time-cut. (Attached Exhibit 2 Time-Cut forms)

9. The Plaintiff scored 75% in Book 2 Post-Test ART Workbook Assignment and 82% in Book 3 Post-Test ART Workbook Assignment. Then the Plaintiff completed the SHU ART Workbook Program receiving an average evaluation in all areas (Attached Exhibit 3 ART Forms)

10. The Plaintiff did not like Clinton Correctional Facility and he sought a transfer from the facility when he was eligible. The Plaintiff had to file a state lawsuit because they destroyed his property when he arrived at the facility. Then Plaintiff filed a federal lawsuit because they denied the Plaintiff access to his medical boots, they would give it to Plaintiff after the lawsuit was filed. The Plaintiff requested a CAD (Cold Alternative Diet) or Kosher Diet which they denied. The second Federal lawsuit dealt with being harassed and being issued a false misbehavior report, being placed on a restraints without due process, being subject to inadequate clothing for exercise in freezing temperatures and requesting the Kosher (CAD) diet. The restraint orders was distressing because the Plaintiff was subject to be on restraints in the visit. The Plaintiff was so distressed over this situation he accused the administration

of employing this white racist savage act by the administration to make Plaintiff's life a living hell. The administration disagreed with Plaintiff's assessment. The Plaintiff even went on a visit with the inmate the administration claimed he wanted to fight. The inmate was separated from the Plaintiff and they mistakenly didn't have restraints on the Plaintiff while another inmate Woods was in the visiting room, yet there was no problems. The Plaintiff wrote a grievance requesting the restraints be removed on the visit being he proved he posed no threat. They said it was a mistake and they would make sure the restraints remained on in Plaintiff's next visit and that's what they did. The Plaintiff would be repeatedly placed on a restraint order being required to remain in restraints in the exercise area and on the visit and the reasons were not valid, it was either false information or without due process. Initially the Plaintiff was placed on a restraint order at Clinton for what happen more than 7½ years earlier. This restraint order would be discontinued in 2008, then the Plaintiff would be placed on a restraint order on 12-10-08 for alledgely wanting to fight on the visit, this was done without a misbehavior report or due process. This restraint order would stay in place for close two years before it's discontinued. Then 2-28-11 the Plaintiff is placed on a restraint order because a lying inmate tells the administration Plaintiff plans to assault staff, again no misbehavior report or due process. Then Plaintiff have a little thick plastic (plexiglas) mirror with no sharp edges or sharp point, that he had under his foot with over two hundred pounds on it and it didn't cut his foot or scratch it. The Deputy Superintendent of Security S. Brown and Superintendent LaValley acknowledge it's a plexiglas mirror. But on 12-20-11 the Plaintiff is given a restraint order for the plastic (plexiglas) mirror and given a misbehavior report, for a glass mirror with sharp edges and the Plaintiff was required to remain in restraints in freezing temperatures in the exercise area. (Dkt. No. 31 Exhibit 3 transfer request; Attached Proof of lawsuits and claims, Dep. S. Brown memo's, restraint orders, grievances, picture of weapon, inmate transfer history Exhibit 4)

4

11. In 1996 Judge Thomas J. McAvoy granted a preliminary injunction in Davidson v. Coughlin III et al. 920 F. Supp. 305 (N.D.N.Y. 1996) for the inmate being subjected to inadequate clothing in exercise during the winter months at Clinton Correctional Facility. This ruling required the facility to provide the inmates long johns, for adequate clothing. In 2009 Clinton decides to discontinue the long johns, and subject Plaintiff to the exact same constitutional violations Judge McAvoy already ruled. Plus, the Plaintiff added an additional violation with the restraints being on during exercise and filed a Preliminary Injunction, Knowing for a fact there was only two possible outcomes and that is a win or a transfer to render it moot. Being the Plaintiff never had a win in any motion he broughtforth before Judge McAvoy 142 F.3d. 103, 910 F. Supp. 857, 910 F. Supp. 861, 912 F. Supp. 655, 912 F. Supp. 646 and etc., and the Judge told the Plaintiff he should have received the death penalty in his Federal Sentencing the Plaintiff was almost certain he would get a transfer and that's exactly what happen. The Plaintiff was transferred to Upstate Correctional Facility on March, 4, 2014 and March, 21, 2014 McAvoy ruled the issue moot. The Plaintiff so happy just to receive a transfer, he didn't even appeal the decision for the 5 years almost that the Plaintiff was subject to the inadequate clothing. It should also be noted that Upstate removed the restraint order immediately even with a frivilous so-called weapon charge pending. (Attached Exhibit 5 Judge McAvoy decision and order).

12. The Defendants make a false claim in Plaintiff's Ad-Seg Reviews stating: "Walker has proven his ability to obtain and craft weapons and to manipulate his environment; he purposefully obtained or created a weapon in February, 2014, while still at Clinton Correctional Facility after he found out he was being transferred to Upstate Correctional Facility. He knew possession of such contraband would result in a Tier III disciplinary action and believed that this would cause his transfer to be cancelled." The obvious evidence of this false statement in Plaintiff's Ad-Seg Review is the facts in this Affidavit in numbers 10 and 11 along with the Exhibits. In addition to

5

the claim as to Plaintiff believing that a transfer would be stopped if the Plaintiff acquired a tier III for a weapon is not only a lie, it calls for someone to be a mind reader as to what I believed. The fact being the Plaintiff had a weapon charge himself in Green Haven and was transferred to Great Meadow the same day. The Plaintiff also witness numerous inmates in S.H.U. over the decade he has been in S.H.U. transferred with weapon charges and other charges. There mind reading ability contradict facts well documented. As far as trying to manipulate the system by acquiring a ticket on purpose to stay in Clinton imply the Plaintiff is a mental health inmate, one that deliberately catches tickets, one that's institutionalized and like being in a cage period. The Plaintiff has never been on a mental health case load, the Plaintiff do not like acquiring tickets and fought the ticket he acquired in an Article 78 proceeding, and the ticket itself states the Plaintiff sought favorable treatment, implying he don't want a ticket. The idea the Plaintiff knew he was being transferred is also a lie, because of Plaintiff's security classification and CMC (central monitoring case) Designation the Plaintiff is not notified in advance when he is being transferred out the facility for any reason. The DOCCS CERT security staff move Plaintiff. So the whole statement is void of any truth. Furthermore, when Defendants was asked if this statement was true and why it's stated in Plaintiff's Ad-Seg review, they stated "they Deny Knowledge or information with which to respond, or simply "they have no such Knowledge". Yet this false statement is the basis for claiming the Plaintiff manipulates the system or is a manipulator in more than half of the Ad-Seg reviews. The whole false statement appears multiple times in Plaintiff's Ad-Seg reviews, it's in the 12-4-15, 2-16-16, 6-12-17, 11-07-17, and 12-05-17 Ad-Seg reviews. No one has knowledge, or documentation or any evidence to support the statement; yet, it's repeatedly being used as a reason to retain Plaintiff in Administrative Segregation Status. (Dkt. No. 31 Exhibit 6 6-12-17, Exh. 7 11-07-17, 12-5-17 Attached Exh. 6 misbehavior Report 12-4-15 and 2-16-16 reviews, Security Classification, ticket, and CMC documents, and all of the Defendants interrogatories #7, Dkt. No. 31 Exhibit 3 Ad-Seg Statements).

6

13. The Defendants created a false statement in Plaintiff's Ad-Seg reviews stating that the Plaintiff stated he assaulted the Deputy Superintendent of Security for No reason, that the Plaintiff was just in a state of blind rage. This statement is a whole lie and exist in Plaintiff's 12-4-15, 1-25-16, 8-11-17, 6-27-16, 1-30-17, 6-16-17, 11-7-17 and 12-05-17 Ad-Seg reviews. Variations of this statement would exist in all the Ad-Seg Reviews stating without provocation, or extreme anger (to support a state of rage). The Defendants would even claim the Plaintiff demonstrated significant anger, and demonstrated rage saying that he would have assaulted the D.S.S if given the opportunity because the Department didn't send his property out at the Departments expense Ad-Seg Reviews 2-28-18 and 5-22-18. The Plaintiff would be referred to as unpredictable based on the false claim assaulted staff for no reason in a blind rage. The Plaintiff is accused of displaying rage when he don't get what he wants. They never detail any specific acts, like raising his voice, being verbally abusive, or hitting or throwing anything. The Dep. of Security states the rage is subtle it's something he can see in Plaintiff, eventhough the Plaintiff maintains a perfectly normal and respectful demeanor. All this is created on a false narrative that the Plaintiff said this. No one can produce a document that states that, nor do any of the Defendants claim the Plaintiff told him that, in fact when the Plaintiff asked the Defendants in their interrogatory if it's true that Plaintiff attacked the D.S.S. in Greenhaven for no reason in a blind rage. All the Defendants states, they don't know exactly what Plaintiff is asking (yet, it's in numerous Ad-Seg reviews), they claim they don't know why it's in the Ad-Seg Review, and don't have no documentation to support it. The only exception is D.S.S. Woodruff who states he has paperwork from Greenhaven that states Plaintiff attacked without provocation (for no reason) but he not sure who wrote up the paperwork. This statement was never responded to in any Ad-Seg statement

Meanwhile, there's ample documentation, To-From Forms, Court Documents and the Plaintiff's own statements that indicate the Plaintiff attacked the D.S.S. in retaliation for him allowing the Correctional Officers to assault the muslims, harass and oppress

7

and take things away from the muslims. The Plaintiff expressed regret and explained he no longer use violence to resolve his issues, that he litigates now, which he has demonstrated for over a decade.

The blatant lie about the Plaintiff wanted to assault the O.S.S. because the administration did not send out his property at their expense is easily shown to be a lie. For starters it was the O.S.S. who extended the Plaintiff a courtesy that he did not have to which allowed the Plaintiff to successfully send out his property. The OSS Woodruff told the Plaintiff that he would allow the Plaintiff to send out his property on the visit but if his visitor didn't get his property it would be destroyed because it's not going to be restored in storage, and the disposal form the Plaintiff signed stated: "The item will be held a maximum of 14 days pending arrival of a visitor. Circle your second choice for disposition in case visitor does not come or accept item. Donate to Charitable org. Or Destroy at Facility. The Plaintiff's daughter came to see him from Virginia on 3-11-17 but forgot to pick-up Plaintiff's property. The OSS extended the Plaintiff a courtesy to get another visit and told the visiting room to not destroy his property because the 14 days lapsed. The Plaintiff had his brother come see him on 4-9-17, but the visiting room did not give the Plaintiff's brother his property, so the O.S.S. told the visiting room to give Plaintiff's brother Plaintiff's property and do not destroy it. Then Plaintiff's brother came on the visit on 4-23-17 and received all of Plaintiff's property. The Plaintiff was truly appreciative for the OSS involvement dealing with Plaintiff's property and thanked him inwhich I've done on numerous occasions when he has resolved or addressed issues presented to him, and he even acknowledges this himself. Also, all the Defendants acknowledged if Plaintiff threatened to harm staff he would be issued a misbehavior report and the O.S.S. states while Plaintiff has been at Upstate Correctional Facility he has never threatened to assault correctional staff. Nor has Plaintiff ever been issued a misbehavior report for such an act.

The foundation of all these false statements in Plaintiff's ad-seg reviews stem from the lie, the Plaintiff said

8

he assaulted the OSS in Green Haven for no reason in blind rage; meanwhile all the Defendants acknowledge if the Plaintiff threatened correctional staff he would have been issued a misbehavior report and OSS. states Plaintiff didn't threatened to harm Correctional Staff in 2018 (DKt. No. 31 Exhibit 6,7 and 9; DKt. No. 14 Motion to Dismiss for failure to State a Claim page #13, Attached Exhibit 7, 6-22-16, 1-30-17 Reviews, Visiting Log, disposal form for Property, Plaintiff's 3-26-2019 Ad-Seg Review and Attached Exhibit 6 interrogatories #16,17, Ad-Seg Review 12-4-15, 2-16-16; DKt. No.16 Exhibit 8-11-17 Ad-Seg Review)

14. The Plaintiff inquired about several things thats impactful on his Ad-Seg status and it was never responded to. Plaintiff's Ad-Seg statement was ignored, or the issues was ignored for years then when given a response it was inadequate. The Plaintiff Ad-Seg reviews was untimely, or didn't exist at all. The Plaintiff, sought to understand why he received 9 Ad-Seg reviews dated January, 22, 2019 and if their was a justifiable reason according Directive 4933, in Plaintiff's interrogatories all the Defendants expressed they don't know why he received 9 reviews at one time and they don't know if the Directive supports that. In addition to that The Plaintiff expounded upon it in detail in his Ad-Seg statement and the Defendants never responded to it in their response at all. (DKt. 31 No. Exhibit 9; Attached Exhibit 8 2-26-2019 Ad-Seg Review Exhibit 6 Interrogatories)

15. The Plaintiff is subject to an illegal cell shield, the Plaintiff's Ad-Seg Statement in relation to it has been completely ignored more than one occasion. The OSS admits because there are inmates at upstate correctional facility who are unruly and uncontrollable in the S.H.U. they keep the plexiglas on the cell doors to protect the correctional staff and nurses from having something thrown on them. Directive 4933 which govern cell shields on cell doors states at Section 305.5(a) "In those SHU cells that have only one solid door, the fixed vision panels will be maintained with the solid metal hatch coverings in an "opened position," unless a deprivation order is issued. The OSS imposing a cell shield

9

on inmates without a deprivation order, is unconstitutional and a 14th Amendment Constitutional Violation, Plaintiff is being deprived due process it's a liberty interest violation. The Superintendent Defendant Uhler claims Section 1 Operations (F) governs Expanded vision panels at Upstate in Directive 4933; the problem with this claim is the Secretary of State, states there is no such section that's a part of Directive 4933. However, 4933 Section 305.5(a) is a part of the Directive, and not being complied with. (Dkt. No. 31 Exhibit 3 Plaintiff's 4-12-16 and 7-4-16 Ad-Seg Reviews; Attached Exhibit 9 DSS Admissions and Responses, Uhler's Affidavit and Secretary of State).

16. The Plaintiff requested to know for years what he could do to be released from Ad-Seg and this request to know what he could do was ignored for years. Then when it was finally addressed in Plaintiff's 12-04-18 Ad-Seg Review he receives it states "the Committee recommends that inmate Walker speak with his Offender Rehabilitation Coordinator about being added to the waitlist for the ART and ASAT workbook programs. Programming may better prepare inmate Walker for eventual transition to a less restrictive environment." Plaintiff's 7-16-2019 states: "Inmate Walker keeps his cell in good order and maintains good personal hygiene. Inmate Walker has had maintained appropriate behavior and it is reported that he continues with his self-studies. OMH staff and medical raised no concerns during this report period. Inmate Walker's interactions with staff are appropriate. Inmate Walker is currently a PIMS level III. Inmate Walker utilizes his phone and visitation privileges, his last visitor being on July 14, 2018. He successfully completed the ART workbook program on 5-19-2019. He continues to participate in Cell Study." But in Plaintiff's 6-17-19 Ad-Seg Review it states: "Release from Ad-Seg for inmate Walker will require a level of humility and remorse that has thus far not been demonstrated. There is no formula or benchmark for such a demonstration - only personal growth. This is a high bar to demand for release from Ad-Seg, but the cost of an untimely release could be the lives of other

inmates or correctional staff. While the committee recognizes the conundrum inherent in requiring a demonstration of growth and non-violent problem-solving while continuing administrative segregation due to the risk of violence inherent in the subject, we are unable to recommend step-down to a less restrictive environment." (Dkt. No. 31 Exhibit 7 12-4-18 Ad-Seg Review; Attached Exhibit 10 6-17-2019 and 7-16-2019 Ad-Seg Reviews).

17. The Defendants claim the Plaintiff sought to obtain a weapon to stay at Clinton and he believed a weapon would stop a transfer, was first addressed by Plaintiff in his 7-4-16 Ad-Seg Review Statement. The facts setforth it was a blatant lie, yet, the Defendants never responded to it, but they continued to state it in their Ad-Seg Review as a fact and basis to retain Plaintiff in Ad-Seg which is in the 11-7-17 and 12-5-2017 Ad-Seg Reviews in it's entirety, then it would exist in parts in numerous Ad-Seg Reviews for years, claiming Plaintiff manipulates the system and claims similar to that. (Dkt. No. 3 Exhibit 3 7-4-16 Ad-Seg Statement; Exhibit 7 11-7-17 and 12-5-2017 Ad-Seg Reviews)

18. The Plaintiff is muslim and addressed his desire to be able to practice his religious belief while in Ad-Seg, by being able to listen to a pre-recorded Khutbah during Jumuah Service. Plaintiff's request reasonable and within the realms of the administration ability to accomadate Plaintiff's constitutional right. This issue is stated in Plaintiff's 4-12-16 and 7-4-16 Ad-Seg Statements, but the Defendants has never addressed the issue. (Dkt. No. 31 Exhibit 3 4-12-16 and 7-4-16 Ad-Seg Statements).

19. The Plaintiff wrote complaints based on Defendant Fitchette denying Plaintiff access to the Court by way of denying Plaintiff legal copies for this case, and has even filed motions based on the issue. The Defendants never responded to Plaintiff's issue in their review responses (Dkt No 31 Exhibit 7 Ad-Seg Statements 9-6-2018 and 1-26-19; Exhibit 9 3-13-2019 Ad-Seg Statement)

20. The Plaintiff received Ad-Seg Reviews almost a year later in which stated Plaintiff threatened to assault the D.S.S. The Plaintiff then expounded on facts in which exposed that statement to be a blatant lie in his 3-13-19 Ad-Seg statement. The 3-26-2019 Ad-Seg Review would acknowledge the previous statements in Plaintiff's February, 28, 2018 and May, 22, 2018 Ad-Seg Reviews to be a lie stating "Inmate Walker wrote a later dated March, 13, 2019. He feels that two prior reviews mischaracterized his feelings toward the Deputy Superintendent for Security. He notes that he likes and appreciates the DSS for always trying to do the right thing and would not want to hurt/injure him in anyway. Inmate Walker notes that he perfers to fight with his "brain and pen now that's my only weapon." (Dkt. No. 31 Exhibit 7  2-28-2018 and 5-28-2018 Ad-Seg Reviews; Exhibit 9 Plaintiff's 3-13-19 Ad-Seg statement and 3-26-2019 Ad-Seg Review attached as Exhibit 11 (See #7)

21. The Plaintiff has numerous health issues, his health has deteriorated over the 20 years in S.H.U., his immune system has weakened, his vision has weakened, his chronic Plantar Fasciitis has required him to wear medical boots for his feet, he has severe internal hemorrhoids, and he has gastrointestinal problems. The Plaintiff has addressed these health issues in detail and display patience in seeking assistance and consideration from the Ad-Seg committee as to how the Plaintiff should not be retained in Ad-Seg due to the Plaintiff's failing health and the S.H.U. is not addressing his medical needs. The Ad-Seg Review Committee either completely ignore Plaintiff medical issues and don't address it all as in the case of Plaintiff 7-4-16 Ad-Seg Statement and 4-12-16. Or the Ad-Seg Review Committee make claims in which they know is not true as in the case of their 2-26-2019 Ad-Seg Review states: "Inmate Walker, in a letter written, dated January, 26, 2019, complains of gastrointestinal pain, constipation, and hemorrhoids. A colonoscopy has been scheduled for inmate Walker. More than a year and a half has passed and the

the Plaintiff still has not received the colonoscopy to see if he has polyps that can turn cancerous. Then the Ad-seg Committee also place issues in Plaintiff's Ad-Seg Review that don't even exist. For instance, the Plaintiff has existed on a high fiber diet for over two years for his gastrointestinal problems; however, the Plaintiff has lost 20 pounds and requested a full portion opposed to low fat because he don't need to lose weight and only want the high fiber. The medical staff refuse to accomodate the Plaintiff stating if he don't like the diet get off of it, they not giving the Plaintiff a full portion. The Plaintiff would address this issue for the last time in Plaintiff's 11-1-18 and 12-25-18 Ad-Seg Statements. The 11-6-18 Ad-Seg Review would respond to it stating "voiced concerns relating to his health and diet. Concerns relating to his health and diet should be addressed to facility and medical staff. With that response the Plaintiff has not complained about his diet to the Ad-Seg Committee or the facility, the Plaintiff accepts the diet and has left the matter alone, in 2019. Plaintiff's 12-3-19 Ad-Seg Review states: He also often complains about his Kosher diet, he either doesn't like it or never satisfied with his meal tray. This statement is a complete fabrication, because the Plaintiff made no complaints about his diet in 2019 and has never been on Kosher in his life. The CAD (Cold Alternative Diet) is the samething as the Kosher Diet, the Plaintiff sought this diet over 8 years ago in a lawsuit and has been denied it on every level, so not only did the Plaintiff not complain about the diet he was on, he never complained about the diet he never existed on. However, the Plaintiff did address the need for a colonoscopy due to his gastrointestinal problems (abdominal pain, hemorrhoids and constipation) in his 1-26-19 Ad-Seg Statement and still has not received a colonoscopy. (Dkt No. 31 Exhibit 3 4-12-16 and 7-4-16 Ad-Seg Statements, Exhibit 10 Medical Records, Dkt. No. 16 Exhibit 2 Medical Records; Attached Exhibit 12 12-3-19 Ad-Seg Review and 11-1-2018 Ad-Seg Statement and 11-6-18 Ad-Seg Review, Plaintiff's Controlled "A" High Fiber Diet, Rabbi denying Kosher diet; Attached Exhibit 4 lawsuit denying Kosher Diet.)

22. The Plaintiff's disciplinary record and unusual incident report is proof that the Plaintiff has not engaged in no physical acts of violence with inmates or correctional staff in the over 19 years he has been in S.H.U. (Attached Exhibit 13 Disciplinary Record and Unusual Incident Reports).

23. The Plaintiff received a misbehavior report for a weapon on 9-27-00 in Greenhaven Correctional Facility and was transferred the same day to Great Meadow Correctional Facility (Attached Exhibit 14 Misbehavior Report and Locator System sheet).

24. The Plaintiff's initial Ad-Seg hearing was reversed and the Plaintiff's Ad-Seg status was confirmed on 6-11-14 but the date in all Plaintiff's Ad-Seg Reviews state Plaintiff was placed in Ad-Seg in 1-17-2014. (Attached Exhibit 15 Ad-Seg Hearing Disposition).

25. The DSS acknowledged the Plaintiff has expressed gratitude to him for certain past occasions. (Attached Exhibit 16 Admissions #15).

26. The DSS acknowledge Plaintiff's Admissions and his 9-20-2017 responses are true and genuine. He also admit the Plaintiff is not under a deprivation order, has not been on a restraint order at upstate. The plexiglas on the cell door is removable and can be opened if unlocked (Attached Exhibit 17 Admissions # 1a, 4, 13, 26, 27)

27. The Ad-Seg committee has suggested the possibility of a less restrictive environment on numerous occasions, based on Plaintiff's good behavior, but provided no explanation as to the duration of the period of good behavior he was required to show. (Attached Exhibit 18 Ad-Seg Reviews)

14

28. The Plaintiff received a misbehavior report for a weapon on 9-27-00 in GreenHaven Correctional Facility and was transferred the sameday to Great Meadow Correctional Facility (Attached Exhibit 14 Misbehavior Report Locator System sheet).

29. The Plaintiff's initial Ad-Seg hearing was reversed and the Plaintiff's Ad-Seg status was confirmed on 6-11-14 but the date in all Plaintiff's Ad-Seg Reviews state Plaintiff was placed in Ad-Seg in 1-17-2014 (Attached Exhibit 15 Ad-Seg Hearing Disposition).

30. The DSS acknowledged the Plaintiff has expressed gratitude to him for certain past occasions. (Attached Exhibit 16 Admissions #15).

31. The DSS acknowledge Plaintiff's Admissions and his 9-20-17 responses are true and genuine. He also admit the Plaintiff is not under a deprivation order, has not been on a restraint order at upstate. The plexiglas on the cell door is removable and can be opened if unlocked (Attached Exhibit 17 Admissions #1a, 4, 13, 26, 27)

32. Plaintiff's grievance # UST-54614-14 filed on 8-14-14 was based on the illegality of his Ad-Seg treatment. The response stated in part... "that administrative segregation inmates housed in S.H.U. will be subject to the same rules as those who have completed thirty days of satisfactory adjustment. Further, an inmate in administrative segregation shall have such status reviewed every sixty days." The sixty day review was reiterated by C.O.R.C. on 12-30-14. (Dkt No. 31 Exhibit 1).

33. In Plaintiff's 12-27-17 Ad-Seg Statement the Plaintiff explains how he did not know how to litigate in the past, and exercised poor judgment, but regret assaulting correctional staff and litigate his issues now and don't resort to violence. (Dkt. No. Exhibit 9, 12-27-17 statement)

Sworn to before me on this
___ day of ___

NOTARY PUBLIC

Thomas P. Kane
Notary Public, State of New York
No. 01KA6357158
Qualified in Franklin County
Commission Expires 04/10/__

Tyrone Walker
Tyrone Walker 94A5258
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

15

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYRONE WALKER, # 94A5258 | N.D.N.Y. D.C. |
| Plaintiff | Case No. 17-CV-1008 |
| -against- | GTS/CFH |
| JOSEPH BELLNIER, et al. | |
| Defendants | |

## ATTACHED EXHIBITS FOR AFFIDAVIT IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## PRO-SE PLAINTIFF TYRONE WALKER

Tyrone Walker 94A5258
Upstate Correctional Facility
P.O. Box 2001
Malone, N.Y. 12953

# CONTENTS OF EXHIBITS

1. Directive 4933 .................................................. 1

2. Time Cut Forms ................................................. 2

3. Completion and Grades Forms For ART ..................... 3

4. Proof of Lawsuits and Claims, Dep. S. Brown Memo's, Restraint Orders, Grievances, picture of weapon, inmate transfer History .. 4

5. Judge McAvoy Decision and Order ........................... 5

6. 12-4-15 and 2-16-16 Ad-Seg Reviews, Security Classification, Ticket, And CMC documents, All Defendant's Interrogatories #7 .. 6

7. 6-27-16 Ad-Seg Review, Visiting Log, Disposal Form For Property, Plaintiff's 3-26-2019 Ad-Seg Review ............ 7

8. 2-26-2019 Ad-Seg Review ...................................... 8

9. DSS Admissions And Responses, Uhler's Aff., Secretary of State .. 9

10. 6-17-2019 and 7-16-2019 Ad-Seg Reviews ................. 10

11. 3-26-2019 Ad-Seg Review ..................................... 11

12. 11-6-18, 12-3-19 Ad-Seg Reviews, 11-1-2018 Ad-Seg Statement Controlled "A" High Fiber Diet, Rabbi denying Kosher Diet .. 12

13. Disciplinary Record and Unusual Incident Report ........ 13

14. Misbehavior Report and Locator System .................. 14

15. Ad-Seg Hearing Disposition .................................. 15

16. Admissions #15 From D.S.S. .................................. 16

Exhibits Cont.

17. DSS Admissions #1a, 4, 13, 26, 27 . . . . . . . . 17

18. Ad-Seg Reviews . . . . . . . . . . . 18